151 T.C. No. 3

UNITED STATES TAX COURT

HARBOR LOFTS ASSOCIATES,
CROWNINSHIELD CORPORATION, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 993-17.                     Filed August 27, 2018.

E, a nonprofit development corporation, is the fee simple owner of two buildings listed on the National Register of Historic Places. H, a partnership, is a long-term lessee of those buildings. In 2009, H and E joined together in transferring a facade easement to a qualified organization under I.R.C. sec. 170(h)(3). H claimed a charitable contribution deduction of $4,457,515 for 2009.

In a notice of final partnership administrative adjustment issued with respect to H, R disallowed H's claimed charitable contribution deduction for the donation of the facade easement. R also determined that an accuracy-related penalty under I.R.C. sec. 6662(a) applies. H's tax matters partner filed a petition in this Court challenging R's determinations and filed a motion for partial summary judgment under Rule 121. R filed a cross-motion for partial summary judgment on the same issue.

R argues that H, as the long-term lessee of the two buildings, is not entitled to a charitable contribution deduction under I.R.C. sec. 170(f)(3)(B)(iii) and (h) because H did not hold a fee interest in the buildings and cannot meet the perpetuity requirements of I.R.C. sec. 170(h)(2)(C) and (5)(A) and sec. 1.170A-14, Income Tax Regs. H argues that fee ownership of real property is not expressly required by I.R.C. sec. 170(h) and that the contribution is similar to a facade easement granted by tenants in common. Alternatively, H argues that it is the equitable owner of the buildings for tax purposes and therefore is eligible for deductions relating to the buildings.

Held: H, as a long-term lessee of the two buildings, does not hold a fee interest in the property subject to the facade easement and cannot contribute a conservation easement under I.R.C. sec. 170(h).

Held, further, a lessee is not entitled to a charitable contribution deduction under I.R.C. sec. 170(h) for joining the fee owner of real property in granting a conservation easement.

Held, further, H's motion for partial summary judgment will be denied.

Held, further, R's motion for partial summary judgment will be granted.

Jeffrey H. Paravano, Jay R. Nanavati, and Michelle M. Hervey, for petitioners.

Deborah Aloof, Bartholomew Cirenza, Shari A. Salu, and Carina J. Campobasso, for respondent.

BUCH, Judge:  This case is a partnership-level action under section 6226 and is before the Court on the parties' cross-motions for partial summary judgment.[1]  The issue for decision is whether Harbor Lofts Associates (Harbor Lofts) is entitled to a charitable contribution deduction of $4,457,515 for the noncash contribution of a facade easement under section 170(f)(3)(B)(iii) and (h).  We hold that they are not.  Harbor Lofts gave up contractual rights it held under the terms of its lease.  A contract right in a long-term lease is not a qualified real property interest, and the waiver of contract rights under such lease does not give rise to a charitable contribution deduction contemplated under section 170(f)(3)(B)(iii) and (h).

## FINDINGS OF FACT

Harbor Lofts is a Massachusetts limited partnership and the long-term lessee of the Daly Drug Building and the Vamp Building in Lynn, Massachusetts.  The buildings and land are owned by the Economic Development & Industrial Corporation of Lynn (Economic Development Corp.), a Massachusetts public corporation created under chapter 778 of the Massachusetts Legislative Acts of 1977.  The Economic Development Corp. took ownership of the buildings in the

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

late 1970s under an option contract assigned to it by Lynn Revitalization Corp. Harbor Lofts and the Economic Development Corp. executed a lease for the buildings in 1979 for a term of 61 years.

Under the terms of the lease Harbor Lofts took on many of the rights and obligations often associated with property ownership. It is required to pay all insurance and utility costs and can use the buildings "for multi-family residential uses and such uses as may be incidental there to, and for no other purpose or purposes whatsoever without the prior written consent of" the Economic Development Corp. Harbor Lofts has a right of first refusal to purchase the buildings and is entitled to a portion of the proceeds if the land is taken under eminent domain.

The lease requires Harbor Lofts to keep and maintain the buildings at its own expense and allows it "to construct on any part or all of the Leased Premises such improvements, alterations and additions * * * as the Lessee may from time to time desire, provided that such do not materially impair the structural integrity of the buildings." Its right to alter the buildings is not unfettered. Alterations over

$100,000 must be approved by the Economic Development Corp. although approval may not unreasonably be withheld.[2]

Soon after the lease was executed, the buildings went through a historic restoration and were converted into multifamily residential apartment buildings. Harbor Lofts leases the apartments under a combination of Federal housing assistance programs and Massachusetts interest subsidy programs. Since the work was completed in the early 1980s, both buildings have been listed on the National Register of Historic Places.

On December 21, 2009, Harbor Lofts and the Economic Development Corp. entered into a preservation restriction agreement with Essex National Heritage Commission, Inc. (Heritage Commission), a Massachusetts nonprofit corporation.[3] The Heritage Commission is a qualified organization under section 170(h)(3) and is chartered to "preserve and promote for the benefit of the public the historic, cultural, and natural resources of the North Shore in Essex County, Massachusetts * * * which purposes include the preservation of historically important properties". Harbor Lofts (the buildings' lessee) joined together with the

---

[2]The $100,000 limit is indexed for inflation.

[3]The preservation restriction agreement was recorded in Essex County, Massachusetts, on December 29, 2009.

Economic Development Corp. (the buildings' fee simple owner) to grant a facade easement to the Heritage Commission to preserve the buildings' exterior. Pursuant to the facade easement Harbor Lofts and the Economic Development Corp. are responsible for all repairs and must maintain the buildings' facade "in the condition and appearance existing on the Effective Date of this grant as documented in photographs and written descriptions".

On December 29, 2009, the same day the facade easement was recorded, Harbor Lofts and the Economic Development Corp. amended the lease by extending its term until December 31, 2056. Along with extending the term of the lease Harbor Lofts and the Economic Development Corp. revised the rent payment schedule; in conjunction with these amendments, Harbor Lofts paid $4,500,000 to the Economic Development Corp.

Harbor Lofts claimed on its 2009 Form 1065, U.S. Return of Partnership Income, a $4,457,515 charitable contribution deduction under section 170 for the donation of a facade easement. Harbor Lofts claimed that its contribution to Heritage Commission was a perpetual conservation restriction under section 170(h)(2)(C) and section 1.170A-14(b)(2), Income Tax Regs.

On October 25, 2016, the Commissioner issued a notice of final partnership administrative adjustment (FPAA) for 2009 to Crowninshield Corp., the tax

matters partner of Harbor Lofts. The Commissioner disallowed Harbor Lofts' charitable contribution deduction under section 170 and determined an accuracy-related penalty of 40% for a gross valuation misstatement under section 6662(b)(3), (e), and (h); or, in the alternative, a 20% penalty under section 6662(a). No specific grounds for the 20% penalty are asserted in the FPAA. At the time of the filing of the petition Harbor Lofts had its principal place of business in Massachusetts.

Harbor Lofts filed a motion for partial summary judgment on May 25, 2017. In its accompanying memorandum Harbor Lofts argues that the facade easement was jointly entered into with the Economic Development Corp. and that it satisfied the requirements of section 170(h)(2)(C). Harbor Lofts' position is that the joint facade easement is similar to an easement granted by tenants in common and requires both Harbor Lofts and the Economic Development Corp. to make a joint contribution of their respective interests. Harbor Lofts further contends that it was an essential party to the facade easement because as the lessee of the buildings it "possessed the right to enjoy the Property free from hindrance or molestation by any person whatsoever" and if it was not bound by the facade easement it "would have no obligation to maintain or preserve the historic nature of the Building facades, and the Easement's conservation purpose could not be fulfilled." Among

other arguments Harbor Lofts also states that it "has the benefits and burdens of ownership of the property" and it is "the equitable owner of the Property and therefore the owner for tax purposes."

The Commissioner filed a response objecting to Harbor Lofts' motion and filed his own motion for partial summary judgment. The Commissioner's position is that Harbor Lofts was not the fee simple owner of the buildings at the time the facade easement was entered and is therefore not entitled to a deduction under section 170(f)(3)(B)(iii). The Commissioner "does not dispute that the * * * [facade easement] itself is a restriction granted in perpetuity within the meaning of I.R.C. § 170(h)(2)(C), because the fee owner of the building, EDIC [the Economic Development Corp.], along with * * * [Harbor Lofts], executed the easement." But the Commissioner disagrees that Harbor Lofts was required to join in granting the facade easement because Harbor Lofts' only interest was a personal property interest as lessee of the buildings. He argues that if Harbor Lofts felt its rights under the lease agreement were restricted by the facade easement it could have sought consideration from the Economic Development Corp.

The Commissioner disagrees with Harbor Lofts' comparison of the facade easement to an easement granted by tenants in common and likewise disagrees with Harbor Lofts' proposition that it is the equitable owner of the real property

for tax purposes. The Commissioner distinguishes cases in which a lease has been treated as a sale for tax purposes, noting that "the Courts have recast a lease as a sale transaction does not imply that taxpayers can do the same to convert a leasehold interest into a 'real property interest' within the meaning of I.R.C. § 170(h)(1)(A)."

Harbor Lofts filed a reply to the Commissioner's response, reiterating many of the same arguments it had made in its motion for partial summary judgment. Its principal argument is that section 170(h)(2)(C) does not explicitly require that a donor of a facade easement own the real property and that multiple parties, such as tenants in common, may join together in granting a facade easement.

The Commissioner filed a sur-reply focusing largely on the perpetuity requirements under section 170(h)(2)(C) and (5) and disputing Harbor Lofts' comparison to tenants in common. The Commissioner's position is that Harbor Lofts, as a "time-limited" lessee, "does not have a perpetual interest to give" and that a "time-limited leasehold interest cannot be equated to the fee interest of a tenant-in-common." Finally the Commissioner states that "the limited duration of the interest held by a lessee is a significant fact distinguishing the deductibility of a donation made by a tenant-in-common with other similarly situated tenants-in-

common, each of whom has a perpetual fee interest, from the non-deductibility by a lessee of a donation made by a landlord."

## OPINION

The issue before this Court is whether Harbor Lofts satisfied the requirements of section 170(f)(3)(B)(iii). In particular, did Harbor Lofts contribute a perpetual conservation restriction as defined under section 170(h)(2)(C) and section 1.170A-14(b)(2), Income Tax Regs., that is exclusively for conservation purposes under section 170(h)(1)(C) and (5)?

I.      Summary Judgment

Either party may move for summary judgment regarding all or any part of the legal issues in controversy. See Rule 121(a). We may grant summary judgment only if there are no genuine disputes as to any material fact. See Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that no genuine dispute exists as to any material fact and that it is entitled to judgment as a matter of law. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, the facts and the inferences drawn from them must be considered in the light most favorable to the nonmoving party. See FPL Grp., Inc. v. Commissioner, 115 T.C. 554, 559 (2000); Bond v.

Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. at 529. When a motion for summary judgment is made and properly supported, the nonmoving party may not rest on mere allegations or denials but must set forth specific facts showing that there is a genuine dispute for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Sundstrand Corp. v. Commissioner, 98 T.C. at 520; see also Rule 121(d). Both the Commissioner and Harbor Lofts filed motions for partial summary judgment. In considering each motion we construe all factual materials and draw all inferences in favor of the opposing party.

## II. Charitable Contribution Deduction

A deduction is allowed for any charitable contribution for which payment is made within the taxable year if the contribution is verified under regulations prescribed by the Secretary. Sec. 170(a)(1). Harbor Lofts sought a charitable contribution deduction for 2009 for a noncash contribution of a facade easement under section 170(f)(3)(B)(iii) and (h)(2)(C).

### A. Charitable Contributions of Property

A donor is generally not eligible for a charitable contribution deduction for a contribution of property consisting of less than the donor's entire interest in that property. Sec. 170(f)(3)(A). But there is an exception for a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii). A contribution of property is a

qualified conservation contribution if (1) the property is a "qualified real property interest," (2) the property is contributed to a "qualified organization," and (3) the contribution is "exclusively for conservation purposes." Sec. 170(h)(1); see also sec. 1.170A-14(a), Income Tax Regs.

The Commissioner concedes that all three requirements under section 170(h)(1) are satisfied by the Economic Development Corp. The only dispute is whether Harbor Lofts contributed a qualified real property interest exclusively for conservation purposes under section 170(h)(1)(A) and (C). The phrases "qualified real property interest" and "exclusively for conservation purposes" are defined by section 170(h)(2) and (5), respectively. But before we consider those definitions, we must first determine the nature of the property rights held by Harbor Lofts when the facade easement was executed.

B.   Massachusetts Property Law

State law determines the nature of property rights contributed, whereas Federal law determines the appropriate tax treatment of those rights. See United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985); see also 61 York Acquisition, LLC v. Commissioner, T.C. Memo. 2013-266, at *8.

Both parties' motions assert that the Economic Development Corp. is the fee owner of the two buildings. We agree. The Economic Development Corp.

became fee owner of the buildings having taken ownership under the option agreement in the late 1970s.

But Harbor Lofts is not a fee owner. In Massachusetts "a demise for a period definitely fixed or at least capable of definite ascertainment" is a leasehold interest for a term of years. Farris v. Hershfield, 89 N.E.2d 636, 637 (Mass. 1950). Harbor Lofts' lease agreement ends in 2056 and is therefore a leasehold interest for a term of years. Massachusetts has traditionally found a leasehold interest for a term of years to be personal property, more specifically a chattel real. Moulton v. Long, 137 N.E. 297, 298 (Mass. 1922). Harbor Lofts is not a fee owner, tenant in common, or joint tenant and has not been granted a life estate or remainder interest. Rather, Harbor Lofts leased property from the Economic Development Corp., and "a commercial lease is a contract rather than a conveyance of property." 275 Washington St. Corp. v. Hudson River Int'l, LLC, 987 N.E.2d 194, 203 (Mass. 2013).

C.     Qualified Real Property Interest

Section 170(h)(2)(C) defines a qualified real property interest as "a restriction (granted in perpetuity) on the use which may be made of the real property." This "perpetual conservation restriction", as defined under section 1.170A-14(b)(2), Income Tax Regs., includes "an easement or other interest in real

property that under state law has attributes similar to an easement (e.g., a restrictive covenant or equitable servitude)."

Harbor Lofts argues that section 170(h) does not explicitly require fee ownership of real property. But Harbor Lofts, having a leasehold interest for a term of years, is incapable of granting a perpetual restriction on the use of the buildings. Harbor Lofts does not hold a fee interest and cannot grant, through the use of an easement or other State law instrument, a perpetual restriction on the buildings. Harbor Lofts does not hold perpetual property rights in the buildings, so it is not possible for it to contribute a perpetual restriction on the use of the buildings. Harbor Lofts is correct that the Code does not specifically require a donor to hold a fee interest, but only the owner of real property or holder of a fee interest is able to grant a perpetual conservation restriction.

Harbor Lofts has given up something of value: the rights to make improvements, alterations, and additions to the buildings. But those rights, initially created under the contract by which Harbor Lofts leases the property, were ceded to the Economic Development Corp. Harbor Lofts gave up contractual rights under the lease agreement, which are personal property rights. And a charitable contribution of a personal property right is not a qualified real property interest under section 170(h)(2)(C).

Harbor Lofts argues that by granting the facade easement jointly with the Economic Development Corp. that it has made a contribution under section 170(h) similar to one made by tenants in common. But Harbor Lofts at no point held a fee interest in the properties; it was not a tenant in common with the Economic Development Corp. The limited duration of a lease is far different from fee ownership as tenants in common.

Harbor Lofts also argues that its interest under the lease has made them equitable owners of the property for tax purposes. But it supports its argument only with cases involving sale leaseback transactions and rulings applying economic substance and disguised-sale doctrines. These cases are not relevant here. Although Harbor Lofts took on many of the rights and obligations often associated with property ownership, its possession of these rights and obligations is of a finite duration ending on the lease's expiration. Section 170(h)(2)(C) specifically sets forth a perpetuity requirement for a facade easement. Even if we were to find that Harbor Lofts holds equitable ownership in the buildings, it is equitable ownership for only a finite period and cannot satisfy the perpetuity requirements of section 170(h)(2)(C). See, e.g., Wachter v. Commissioner, 142 T.C. 140, 149 n.3 (2014).

D.    <u>Exclusively for Conservation Purposes and Protected in Perpetuity</u>

Section 170(h)(5) defines a contribution made "exclusively for conservation purposes" and states that a "contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." As a time-limited lessee Harbor Lofts is incapable of making a contribution protected in perpetuity. Harbor Lofts as lessee does not have the power to impose perpetual restrictions on property in which it does not have an absolute right. It cannot give what it does not have. At most Harbor Lofts can create a restriction that runs through the term of the lease, which is not perpetual. The Economic Development Corp. on the other hand, as fee owner of the buildings, is capable of creating an easement or other State law restriction that runs with the buildings and can therefore protect the conservation purpose in perpetuity.

III.    <u>Conclusion</u>

The Commissioner is entitled to partial summary judgment disallowing Harbor Lofts' 2009 charitable contribution deduction. Harbor Lofts, as the buildings' long-term lessee, did not have a fee interest in the buildings and did not contribute a conservation restriction protected in perpetuity under section 170(h). Harbor Lofts gave up contractual rights under the lease agreement, which are personal property rights. Because Harbor Lofts failed to meet the requirements of

section 170(h), the facade easement does not result in a charitable contribution

deduction to Harbor Lofts under section 170(f)(3)(B)(iii).

To reflect the foregoing,

<u>An appropriate order will be issued</u>.